UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILLIP SULLIVAN, JR., on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>LIFE TIME, INC.,<br><br>       Defendant. | Case No. 1:18-cv-07404-KPF |

**DEFENDANT LIFE TIME, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ..............................................................................................................3

    A.    Life Time Has a Robust Accessibility Program ........................................................3

    B.    Life Time Closed-Captioned the Video Before Plaintiff Brought Suit ...................5

ARGUMENT ...................................................................................................................................6

    I.    RULE 12(b)(1) STANDARD OF REVIEW ...........................................................6

    II.    PLAINTIFF DOES NOT HAVE ARTICLE III STANDING ...............................7

    III.    THIS ACTION IS MOOT BECAUSE THE VIDEO IS ACCESSIBLE ................9

    IV.    PLAINTIFF'S STATE AND LOCAL LAW CLAIMS SHOULD BE DISMISSED ..........................................................................................................12

CONCLUSION ..............................................................................................................................13

i

**TABLE OF AUTHORITIES**

Page

**Cases**

*Access Now, Inc. v. Blue Apron, LLC*,
  No. 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112 (D.N.H. Nov. 8, 2017) ...........................10

*AirTouch Paging v. FCC*,
  234 F.3d 815 (2d Cir. 2000)....................................................................................................9

*Bacon v. Walgreen Co.*,
  91 F. Supp. 3d 446 (E.D.N.Y. 2015) ............................................................................. passim

*Cohen v. Postal Holdings, LLC*,
  873 F.3d 394 (2d Cir. 2017)..................................................................................................12

*Cotz v. Mastroeni*,
  476 F. Supp. 2d 332 (S.D.N.Y. 2007)...................................................................................12

*Dillard v. Runyon*,
  928 F. Supp. 1316 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997) ...............................6

*Disabled in Action of Metro N.Y. v. Trump Int'l Hotel & Tower*,
  No. 01 Civ. 5518 (MBM), 2003 U.S. Dist. LEXIS 5145 (S.D.N.Y. April 1,
  2003) ...................................................................................................................................7, 9

*Epstein v. JPMorgan Chase & Co.*,
  No. 13 Civ. 4744 (KPF), 2014 U.S. Dist. LEXIS 38628 (S.D.N.Y. Mar. 21,
  2014) ...................................................................................................................................8, 9

*Exchange Nat'l Bank v. Touche Ross & Co.*,
  544 F.2d 1126 (2d Cir. 1976)..................................................................................................6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)............................................................................................................7, 9

*Gomez v. BJ's Wholesale Club, Inc.*,
  No. 17-23584-CIV-Altonaga/Goodman, 2018 U.S. Dist. LEXIS 3088 (S.D.
  Fla. Jan. 5, 2018)...................................................................................................................10

*In re Express Scripts/Anthem ERISA Litig.*,
  285 F. Supp. 3d 655 (S.D.N.Y. 2018).....................................................................................7

*Kreisler v. Grossman Cedar Lane/36th St., LLC*,
  No. 16 Civ. 1021 (KPF), 2018 U.S. Dist. LEXIS 6845 (S.D.N.Y. Jan. 10,
  2018) .....................................................................................................................................12

*Lewis v. Cont'l Bank Corp.*,
   494 U.S. 472 (1990) ......................................................................................................... 8

*Montoya v. ING Life Ins. & Annuity Co.*,
   653 F. Supp. 2d 344 (S.D.N.Y. 2009) ............................................................................. 6

*Morrison v. Nat'l Austl. Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ............................................... 8

*Nowak v. Ironworkers Local 6 Pension Fund*,
   81 F.3d 1182 (2d Cir. 1996) .......................................................................................... 12

*Organic Seed Growers & Trade Ass'n v. Monsanto*,
   851 F. Supp. 2d 544 (S.D.N.Y. 2012), *aff'd*, 718 F.3d 1350 (Fed. Cir. 2013) ............... 7

*Sharp v. Rosa Mexicano, D.C.*,
   496 F. Supp. 2d 93 (D.D.C. 2007) ................................................................................ 10

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .................................................................................................... 8

*Stan v. Wal-Mart Stores, Inc.*,
   111 F. Supp. 2d 119 (N.D.N.Y. 2000) ........................................................................... 12

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ...................................................................................................... 6, 7

*Tasini v. New York Times Co.*,
   184 F. Supp. 2d 350 (S.D.N.Y. 2002) ............................................................................. 6

*Thomas v. Grunberg 77 LLC*,
   No. 15-CV-1925 (GBD) (BCM), 2017 U.S. Dist. LEXIS 104606 (S.D.N.Y.
   July 5, 2017) .................................................................................................................... 9

*White v. First Am. Registry*,
   230 F.R.D. 365 (S.D.N.Y. 2005) .................................................................................... 9

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ........................................................................................................ 8

**Statutes**

28 U.S.C. § 1367(a) ............................................................................................................ 12

28 U.S.C. § 1447(c) ............................................................................................................ 12

Americans with Disabilities Act, Title III, 42 U.S.C. § 12182 *et seq.* ("ADA") ................... *passim*

Declaratory Judgment Act, 28 U.S.C. § 2201 ....................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)......................................................................................................... *passim*

U.S. Const. art. III, § 2 ..............................................................................................................7

Defendant Life Time, Inc. ("Life Time" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss with prejudice the Class Action Complaint (the "Complaint") of Plaintiff Phillip Sullivan, Jr. ("Plaintiff") under Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

Life Time owns and operates a chain of fitness clubs in the United States and Canada. In addition to its physical locations, Life Time also operates a website, which provides information about Life Time's clubs to the public (the "Website"). Plaintiff, Phillip Sullivan Jr. filed this lawsuit against Life Time five months after his sole visit to the Life Time website. He alleges that when he visited the Website, he was unable to enjoy a fitness instructor's promotional video (the "Video") because it was not closed-captioned, and therefore suffered discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.* (the "ADA") and various state and local laws. Mr. Sullivan waited approximately five months between visiting the Website and filing his lawsuit. In the interim, Life Time had closed-captioned the Video pursuant to its Accessibility Policy. It has remained closed-captioned since, and the remainder of the Website has been and continues to be accessible to the disabled.

Mr. Sullivan's Complaint fails for a number of reasons and must be dismissed accordingly. As an initial matter, the ADA only permits a plaintiff to obtain injunctive relief, and not damages.[1] In general terms, it essentially provides a bulwark against future misconduct, by requiring defendants to eliminate barriers to access by the disabled. An ADA plaintiff lacks Article III standing to bring a lawsuit when he cannot establish that there is a pending wrong,

---

[1] While attorneys' fees may be awarded in connection with the injunctive relief ordered, there can be no attorneys' fees if there is no injunctive relief available. In any event, Mr. Sullivan is a serial plaintiff who has filed over 90 virtually-identical complaints, in this district, in 2018 alone. His various Complaints bear such close resemblance to each other, that it would be nearly impossible to justify an award of attorneys' fees in any one individual case.

such as a barrier to access, for which he seeks judicial redress.  Mr. Sullivan's Complaint only alleges a single wrong that already was remedied before he filed suit, leaving nothing for the Court to redress.  Second, in order to establish that he has standing to seek injunctive relief vis-à-vis future conduct, an ADA plaintiff must be able to demonstrate the threat of continuing and future injury.  Mr. Sullivan cannot do so here.  The Video in question has been accessible to the deaf since before Mr. Sullivan's Complaint was filed.  Notably, Mr. Sullivan has not cited any other barrier to access—because there is none—and so he cannot establish any threat of continuing or future injury.  As a result, he lacks standing to seek any injunctive relief under the ADA.  Third, even if he had standing, Mr. Sullivan's Complaint would fail because it is moot.  There is no relief that he has sought in his Complaint that this Court can provide.  He demanded that the Video be closed-captioned, even though it already was.  He demanded that Life Time maintain a Website that is accessible to the deaf, even though it already does.  There is no relief sought in the Complaint that was not already available before Mr. Sullivan filed his Complaint.  Thus, his Complaint is moot.

   Finally, Mr. Sullivan's state and local law claims also should be dismissed.  While a federal court may under certain circumstances exercise supplemental jurisdiction over state and local law claims, it can only do so where it can exercise original jurisdiction for the related federal law claims.  Here, the Court lacks jurisdiction to grant injunctive relief under the federal ADA claim, and therefore it cannot exercise supplemental jurisdiction over the state and local law claims.

   Ultimately, proceeding with this case would be an exercise in futility and a waste of judicial resources.  Mr. Sullivan cannot obtain anything from this Court, as he has not alleged

any wrong for which this Court can provide a remedy.  Accordingly, his Complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS

Life Time operates athletic clubs throughout the United States.  Life Time offers individual and group personal training sessions and lifestyle and fitness activities to its clubs' members.  Life Time provides information about its clubs and their amenities and offerings on its website, www.lifetime.life.

Plaintiff alleges that he is deaf.  He also alleges that he was unable to enjoy one video on the Website when he visited the Website in March 2018, because the Video lacked closed-captioning at that time.  (Compl. ¶¶ 2, 16, 40.)  Notwithstanding Plaintiffs' allegations (which are not afforded a presumption of truth on this motion under Rule 12(b)(1)), it is indisputable that the Video was closed-captioned and accessible to Plaintiff before August 15, 2018, when Plaintiff filed his Complaint in this action.

**A.     Life Time Has a Robust Accessibility Program.**

Life Time began addressing Website accessibility in early 2016.  Life Time formally adopted its Website Accessibility Policy and Related Practices in March 2016 (the "Accessibility Policy").  (Kokotovich Decl.[2] ¶ 2, Ex. A.)  The Accessibility Policy established a comprehensive plan for redesigning the Website to make it accessible to deaf and blind users—including full implementation of the Web Content Accessibility Guidelines ("WCAG") referenced in the Complaint, complete with closed-captioning of videos.  (*Id.* ¶¶ 2, 6, Ex. A; Jurek Decl.[3] ¶ 2.)  Life Time also implemented robust internal procedures to ensure that the Website remains

---

[2] "Kokotovich Decl." refers to the Declaration of Nick Kokotovich, Life Time's Senior Director of Application Development, dated December 10, 2018 and filed herewith.
[3] "Jurek Decl." refers to the Declaration of Ryan Jurek, Life Time's Director of Websites and Digital Analytics, dated December 10, 2018 and filed herewith.

accessible and any inadvertent inaccessibility is uncovered and remedied in short order. These procedures include, among others, regular monitoring and evaluation of the Website, and the appointment of a permanent Website Accessibility Coordinator ("WAC") to facilitate a user-friendly experience for disabled individuals. (Kokotovich Aff. ¶¶ 2-5, Ex. A.)

Life Time also published a public-facing version of the Accessibility Policy to the Website through a conspicuous hyperlink located in the footer of every page on the Website. (*Id.* ¶ 3, Ex. B.) This webpage provides phone and e-mail contact information for the WAC so that Website users can notify Life Time of any accessibility issues they encounter, enabling Life Time to assist or temporarily accommodate users who have difficulty navigating the Website. The WAC also investigates accessibility complaints brought to its attention forthwith, and resolves Website accessibility issues as they arise. (*Id.* ¶ 4, Ex. A.) Since Life Time established and published a telephone number and e-mail address dedicated to fielding accessibility concerns and issues in 2016, users with disabilities have successfully contacted Life Time to ask questions about the accessibility of individual Life Time clubs, but to date no one—including Plaintiff—has used the provided phone number or email address to report a problem about the accessibility of the Website. (*Id.* ¶ 4.)

Life Time also provides training to members of its team who handle various aspects of Life Time's accessibility program, from Member Relations team members who may field questions or concerns from disabled consumers to Technology team members who support the technical design and development of the Website, including WCAG compliance. (*Id.* ¶¶ 2, 4, Ex. A.) Life Time has held in-person training sessions on March 24, 2016, April 7, 2016, September 12, 2017, and June 20, 2018. (*Id.* ¶ 5.)

Life Time has also developed and implemented an internal protocol for evaluating and, if necessary, resolving coding errors that can create accessibility barriers (the "Accessibility Response Protocol"). (*Id.* ¶ 6, Ex. C.) For example, Life Time routinely audits the Website using specialized software tools to ensure compliance with WCAG 2.0 AA. (*Id.* ¶ 6.) Life Time confirms all reported errors and elevates them for prompt resolution and repair in accordance with its Accessibility Response Protocol. (*Id.*)

**B.      Life Time Closed-Captioned the Video Before Plaintiff Brought Suit.**

Plaintiff alleges that he attempted to view the Video in March 2018, over four months before he filed the Complaint on August 15, 2018. (*See* Compl. ¶ 16; Conf. Tr.[4] at 2:19-22.) Though the Video was not closed-captioned at that time, Life Time had already undertaken efforts to bring its Website into full compliance with WCAG 2.0 AA in earnest. (*See* Kokotovich Decl. ¶ 2.) As part of this endeavor, Life Time made a closed-captioned version of the Video available on the Website as of August 8, 2018, as demonstrated by web content upload logs and electronic metadata.[5] (Jurek Decl. ¶ 3, Exs. A-B.) The Video remains closed-captioned to date, and Life Time intends to maintain it in this manner. (*Id.* ¶ 4.) Thus, when Plaintiff filed his Complaint on August 15, 2018, Life Time had already removed the single accessibility barrier alleged in the Complaint. Plaintiff did not attempt to access Life Time's Website or the Video ever again. (*See* Conf. Tr. at 2:19-22.)

---

[4] "Conf. Tr." refers to the transcript of the parties' pre-motion conference before the Court on November 16, 2018, and true and accurate copy of which is attached as <u>Exhibit 1</u> to the Declaration of Narges M. Kakalia, dated December 10, 2018 and filed herewith.
[5] Life Time made this update pursuant to its own Accessibility Policy, and not at Plaintiff's or any other third-party's urging. (Jurek Decl. ¶ 3.)

**ARGUMENT**

**I.     RULE 12(b)(1) STANDARD OF REVIEW**

Fed. R. Civ. P. 12(b)(1) permits a defendant to challenge the factual sufficiency of the plaintiff's assertion of jurisdiction on a motion to dismiss. *See Montoya v. ING Life Ins. & Annuity Co.*, 653 F. Supp. 2d 344, 348 (S.D.N.Y. 2009). A federal court generally must satisfy itself that it has jurisdiction, including determining that the Plaintiff has constitutional Article III standing, before deciding a case on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.").

When reviewing a "factual attack" such as the one here, the Court may consider matters outside the pleadings, such as affidavits, documents, and deposition testimony, to resolve factual disputes regarding the existence of jurisdiction. *Dillard v. Runyon*, 928 F. Supp. 1316, 1321-22 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997). *See also Montoya*, 653 F. Supp. 2d at 348. Moreover, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Plaintiff bears the burden to prove that jurisdiction is proper by presenting evidence to controvert Life Time's position, and he cannot do so here. *See Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 354 n.2 (S.D.N.Y. 2002) ("[W]here a party has had an opportunity to submit affidavits or other proof to oppose the factual challenge raised by an adversary on a motion made pursuant to Rule 12(b)(1) and has failed to submit such evidence or otherwise waived the opportunity to do so, then the Court may properly address the factual contentions underlying the Rule 12(b)(1) motion"). *See also Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976) ("[J]ust as under Rule 56, a party opposing a

Rule 12(b)(1) motion cannot rest on the mere assertion that factual issues may exist."); *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 673 (S.D.N.Y. 2018) (granting motion to dismiss "[b]ecause Plaintiffs did not offer evidence to controvert Ms. Adler's sworn declaration and it is Plaintiffs' burden to establish standing by a preponderance").

## II.  PLAINTIFF DOES NOT HAVE ARTICLE III STANDING.

In the absence of a live "case" or "controversy" with respect to Plaintiff's ADA claim—his only federal claim[6]—Plaintiff cannot establish standing and invoke the Court's subject-matter jurisdiction. U.S. Const. art. III, § 2. *See Steel Co.*, 523 U.S at 102-04; *Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015). Plaintiff bears the burden of establishing Article III standing and must demonstrate that (1) he suffered an injury-in-fact (2) fairly traceable to Life Time's challenged conduct, and (3) it is likely to be redressed by a favorable judicial decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

To establish injury-in-fact, Plaintiff must demonstrate an injury that it is "concrete and particularized" and "actual or imminent." *See id.* In the ADA context, a plaintiff must "show a plausible intention or desire to return to the [public accommodation] but for the barriers to access" to establish "actual or imminent" injury. *Disabled in Action of Metro N.Y. v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518 (MBM), 2003 U.S. Dist. LEXIS 5145, at *21 (S.D.N.Y. April 1, 2003) (emphasis added) (collecting cases). Because injunctions regulate future conduct, a party has standing to seek injunctive relief—the only form of relief available to Plaintiff under

---

[6] Plaintiff's Fifth Cause of Action for Declaratory Relief must also be dismissed because it is premised on a declaration of Plaintiff's rights under the ADA and the Declaratory Judgment Act, 28 U.S.C. § 2201, and is not an independent source of federal jurisdiction. *Organic Seed Growers & Trade Ass'n v. Monsanto*, 851 F. Supp. 2d 544, 550 (S.D.N.Y. 2012), *aff'd*, 718 F.3d 1350 (Fed. Cir. 2013) ("The jurisdiction of courts to issue judgments is limited by the justiciability of 'cases' or 'controversies' under Article III of the Constitution…. Thus a district court has no jurisdiction over a declaratory judgment action if the suit does not meet Article III's case or controversy requirement.") (internal citation omitted).

the ADA[7]—only if Plaintiff can demonstrate a real and immediate threat of future injury. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be certainly impending to constitute an injury in fact") (internal quotations omitted). This showing must be made affirmatively (and not as an inference). *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences . . . .").

There is no genuine issue of material fact that at the time the Complaint was filed on August 15, 2018, the Video was closed-captioned and accessible to Plaintiff, and has remained so ever since. (Jurek Aff. ¶¶ 3-4, Exs. A-B.) There also is no genuine issue of material fact that prior to the filing of the Complaint, Life Time had enacted an Accessibility Policy with implementing procedures, employed a Website Coordinator, and undertaken a comprehensive effort to render the Website accessible on an ongoing basis. (Kokotovich Decl. ¶¶ 2-6, Exs. A-C.) Hence the Complaint fails the second and third prongs of the Article III standing requirements: Plaintiff is unable to show that he cannot return to the Website because of a barrier to access, as there is none (and he did not try). (Conf. Tr.[8] at 2:19-22.) Similarly, he cannot demonstrate that there is any challenged conduct that this Court can redress, since all the challenged conduct was remedied prior to Plaintiff's commencement of this action. *See*

---

[7] Plaintiff's demand for attorneys' fees cannot, without injury-in-fact, keep his ADA claim alive. As here, where no injunctive relief is available, "a plaintiff's interest in attorney's fees cannot create a 'case or controversy.'" *See Bacon*, 91 F. Supp. 3d at 453-54 (citing *Epstein v. JPMorgan Chase & Co.*, No. 13 Civ. 4744 (KPF), 2014 U.S. Dist. LEXIS 38628, at *23 n.6 (S.D.N.Y. Mar. 21, 2014) ("Plaintiff's claim for attorney's fees and costs he has incurred in bringing this claim do not establish an injury sufficient for standing purposes."); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("This interest in attorney's fees, is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.").

[8] "Conf. Tr." refers to the transcript of the parties' pre-motion conference before the Court on November 16, 2018, and true and accurate copy of which is attached as <u>Exhibit 1</u> to the Declaration of Narges M. Kakalia, dated December 10, 2018 and filed herewith.

*Disabled in Action*, 2003 U.S. Dist. LEXIS 5145, at *21.  Accordingly, Plaintiff cannot demonstrate the "actual or imminent" harm necessary to establish an injury-in-fact, and lacks constitutional standing to bring an ADA claim based on the Video.  *See Friends of the Earth*, 528 U.S. at 180-81.

Because Plaintiff's ADA claim must be dismissed and he has no other basis to invoke the Court's subject-matter jurisdiction, the Complaint (which also includes state and local law claims and a claim for declaratory relief) must be dismissed in its entirety.  *See* discussion *infra*, pp. 12-13.  *See Friends of the Earth*, 528 U.S. at 191 (stating that a plaintiff who lacks standing at the time an action commences is not entitled to a federal judicial forum).  *See also Epstein v. JPMorgan Chase & Co.*, No. 13 Civ. 4744 (KPF), 2014 U.S. Dist. LEXIS 38628, at *19, 21 (S.D.N.Y. Mar. 21, 2014) ("…standing must exist at the commencement of litigation." (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008)); see also *AirTouch Paging v. FCC*, 234 F.3d 815, 818-19 (2d Cir. 2000) (dismissing petition for review of agency determination based on absence of standing); *White v. First Am. Registry*, 230 F.R.D. 365, 368-69 (S.D.N.Y. 2005) (plaintiff did not have standing where defendant had remedied alleged wrongful conduct prior to commencement of action).

### III.     THIS ACTION IS MOOT BECAUSE THE VIDEO IS ACCESSIBLE.

Even if the Court finds that Plaintiff had constitutional standing at the time he commenced this action, his ADA claim is now moot by virtue of the fact that the Video has been closed-captioned and is fully accessible to deaf users.  (Jurek Decl. ¶¶ 3-4, Exs. A-B.)  It is well-settled that the ADA allows only injunctive relief and does not provide damages.  *See Bacon*, 91 F. Supp. 3d at 451.  "When [injunctive relief] is no longer possible, the ADA claim becomes moot, depriving the court of subject-matter jurisdiction, and must be dismissed." *Thomas v. Grunberg 77 LLC*, No. 15-CV-1925 (GBD) (BCM), 2017 U.S. Dist. LEXIS 104606, at *6-7

(S.D.N.Y. July 5, 2017) (recommending dismissal of Plaintiff's ADA claim where restaurant allegedly inaccessible to wheelchair users had closed).

Here, the only injunctive relief Plaintiff requests is directed at (1) prohibiting Life Time from continuing to violate the ADA, and requiring (2) Life Time to make its Website fully compliant with the ADA.[9] (Compl. ¶¶ 105-06.) The Complaint alleges no other access barriers on the Website other than the Video, which Life Time closed-captioned on August 8, 2018. (*See generally* Compl.; Jurek Decl. ¶¶ 3-4, Exs. A-B.) Moreover, the Website has been and remains accessible to disabled individuals, pursuant to a policy and implementing procedures that comply with WCAG 2.0 AA. (*See* Kokotovich Decl. ¶¶ 2, 6, Exs. A-C.) Given these incontrovertible facts, there is no injunctive relief the Court can order to provide Plaintiff with any additional redress.

Thus, even if Plaintiff had filed his Complaint <u>before</u> the Video was closed-captioned, the very act of making the Video accessible on Life Time's website would have mooted his ADA claim. Plaintiff cannot obtain from the Court an order that Life Time make its Website compliant with the ADA, because it already is. *See, e.g.*, *Grunberg*, 2017 U.S. Dist. LEXIS 104606, at *6; *Sharp v. Rosa Mexicano, D.C.*, 496 F. Supp. 2d 93, 98-99 (D.D.C. 2007) (ADA claim was moot where it was undisputed that washroom was currently wheelchair accessible); *Gomez v. BJ's Wholesale Club, Inc.*, No. 17-23584-CIV-Altonaga/Goodman, 2018 U.S. Dist. LEXIS 3088, at *3-4 (S.D. Fla. Jan. 5, 2018) ("…where a defendant has addressed a barrier to access alleged by a plaintiff, or developed a plan to do so . . . the claim is moot and the court is divested of jurisdiction.").

---

[9] Courts have recognized conformance with WCAG 2.0 AA as a "sufficient condition, but not a necessary condition" to establish a website's compliance with the ADA. *See, e.g.*, *Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112, at *20, 29-30 (D.N.H. Nov. 8, 2017) (collecting cases).

Finally, the "voluntary cessation" exception to the mootness doctrine does not apply in this case. *See Bacon*, 91 F. Supp. 3d at 452 (ADA claim against pharmacy became moot after voluntary ADA compliance by defendant). The exception exists to prevent dismissal of meritorious claims based on a defendant's temporary reversals of discriminatory practices in an attempt to evade liability. In *Bacon v. Walgreen*, for example, the district court declined to invoke the exception where the defendant's ADA violation "appear[ed] to have been unknowing and unintentional;" there [was] no reason to think that Walgreens would desire to violate the ADA in the future;" and "although the repairs were made in response to [the] lawsuit, Walgreens appears to have genuinely attempted to comply with the law." *Id.* (dismissing ADA claim against pharmacy as moot after store added more space between metal detectors to allow for wheelchair access).

Life Time's commitment to the accessibility of its Website is demonstrable, dating back to March 2016, more than two years before Plaintiff commenced this action. (Kokotovich Decl. ¶ 2.) Life Time has invested significant funds, time and effort to make its Website accessible to the disabled, including developing WCAG proficiency in-house among its web developers and content creators, who are charged with ongoing auditing and maintenance of the Website's accessibility features. (*Id.* ¶¶ 2, 6, Exs. A-B.) And Life Time has followed the spirit and the letter of the ADA consistently and in good faith through its proactive efforts to make its facilities and Website welcoming and accessible experiences for disabled customers. As in *Bacon*, any concerns that Life Time's Website will violate the ADA in the future are baseless, "purely speculative and conjectural," and therefore are "insufficient to rebut [Life Time's] strong showing that plaintiff's claim is moot." 91 F. Supp. 3d at 452-53.

## IV. PLAINTIFF'S STATE AND LOCAL LAW CLAIMS SHOULD BE DISMISSED.

Once this Court determines that Plaintiff lacks standing to assert a claim under the ADA or that Plaintiff's ADA claim is moot, it also must dismiss Plaintiff's remaining state and local law claims. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action <u>within such original jurisdiction</u> that they form part of the same case or controversy . . . ." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) (emphasis added) (vacating district court order retaining jurisdiction over state law claims and remanding proceeding to state court). This means that a district court "cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). It naturally follows, then, that when a district court correctly dismisses all federal claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Nowak*, 81 F.3d at 1187-88.

Even if this Court finds that the state and local claims are not subject to mandatory dismissal, the Court should nevertheless decline to exercise supplemental jurisdiction over those claims. *See Kreisler v. Grossman Cedar Lane/36th St., LLC*, No. 16 Civ. 1021 (KPF), 2018 U.S. Dist. LEXIS 6845, at *1-2 (S.D.N.Y. Jan. 10, 2018) (ramp built <u>after</u> commencement of litigation rendered federal ADA claims moot; Court declined thereafter to exercise supplemental jurisdiction over state law claims alleging the same injury); *Bacon*, 91 F. Supp. 3d at 453; *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 127 n.4 (N.D.N.Y. 2000) (citing *Castellano v. City of New York*, 142 F.3d 58, 74 (2d Cir. 1998)); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 355

(S.D.N.Y. 2007). Accordingly, Life Time respectfully requests that the Court dismiss Plaintiff's second through fourth claims for relief as well.

## CONCLUSION

For the reasons set forth above, Defendant Life Time, Inc. respectfully submits that the Complaint in this action should be dismissed in its entirety, with prejudice.

Dated:  December 10, 2018

>
> /s/ *Narges M. Kakalia*
> Narges M. Kakalia
> Todd F. Rosenbaum
> MINTZ, LEVIN, COHN, FERRIS,
>   GLOVSKY AND POPEO, P.C.
> Chrysler Center
> 666 Third Avenue, 25th Floor
> New York, NY 10017
> Tel:  (212) 935-3000
> Fax:  (212) 983-3115
> *NMKakalia@mintz.com*
> *TFRosenbaum@mintz.com*
>
> *Counsel for Defendant*
> *Life Time, Inc.*